**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SPENCER WILSON,**

                                        **Plaintiff,**

        **v.**                                                          **1:20-cv-00104**

**COUNTY OF ULSTER, TOWN OF ULSTER,**
**KYLE FAULKNER, WILLIAM MOYLAN,**
**STEVEN FELLOWS, P.O. SICKLER, P.O.**
**GRAMOGLIA, P.O. REAVY, and JOHN or JANE**
**DOE 1-10,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                            **DECISION and ORDER**

**I.      INTRODUCTION**

        This action was originally filed in New York State Court and removed to this

Court by Defendants. Dkt. Nos. 1 & 2. The Complaint has been amended several times,

with the operative pleading being the Second Amended Complaint, Dkt. No. 42 ("SAC").

This case concerns a confrontation between Plaintiff and an individual named Brandon

Fellows and Plaintiff's subsequent interaction with law enforcement in Ulster County, New

York in January 2019. _See generally_ SAC.  Plaintiff asserts various claims pursuant to 42

U.S.C. § 1983 and New York State law.  _See id._

        Now before the Court are motions brought pursuant to Fed. R. Civ. P. 12(b)(6) to

dismiss this action by (1) Defendants Town of Ulster, Kyle Faulkner, William Moylan, P.O.

Sickler, P.O. Gramoglia, P.O. Reavy, and John or Jane Doe 1-10 to the extent they are affiliated with the Town of Ulster (collectively, "Town Defendants"), Dkt. Nos. 43, 45; and, (2) County of Ulster and John or Jane Doe 1-10 to the extent they are alleged to be employees or acting on the behalf of the County of Ulster (collectively, "County Defendants"), Dkt. No. 44.  Although Plaintiff's counsel requested a number of adjournments to the return date of the motions, and the Court set a new return date for August 9, 2021, Plaintiff has filed no opposition papers in response to these motions.  For the reasons that follow, the Town Defendants' motion is granted in part and denied in part, and the County Defendants' motion is granted.

## II.    STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  "'[I]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052 (KMK), 2020 WL 3618190, at *3 (S.D.N.Y. July 2,

2

2020)(quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The complaint must contain "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Twombly,* 550 U.S. at 555. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted). Unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible," the complaint should be dismissed. *Twombly*, 550 U.S. at 570.

The Local Rules provide that "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to

the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting . . . of the motion." N.D.N.Y. L.R. 7.1(a)(3).  "In the Northern District, where a plaintiff . . .  fails to oppose . . . arguments by a defendant in its motion to dismiss, 'the movant's burden is lightened such that, in order to succeed, the movant need only show facial merit in support of its motion, which has appropriately been characterized as a lightened burden.'" *Baldwin v. United States*, No. 1:20-CV-214 (GLS/CFH), 2021 WL 431145, at *2 (N.D.N.Y. Feb. 8, 2021)(quoting *Breezee v. Colvin*, No. 5:14-CV-1114 GTS, 2015 WL 5725083, at *2 (N.D.N.Y. Sept. 28, 2015) (citations omitted), and citing *Lefevre v. Cty. of Albany*, No. 1:14-CV-155, 2015 WL 1626005, at *3 (N.D.N.Y. Apr. 13, 2015) (citations omitted) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion."))(ellipses added).

## III.   ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

On January 24, 2019, Plaintiff was involved in a violent physical altercation with his daughter's boyfriend, Brandon Fellows, during which a rifle was discharged. *See* Compl. Dkt. No. 2, ¶¶ 14-20.[1]  Plaintiff alleges that "sometime after [he] became aware of Brandon

---

[1]Plaintiff asserts in the Complaint:

14. On January 23, 2019 at about 2: 00 P.M., Plaintiff got into an argument with his daughter' s boyfriend Brandon Fellows ( Mr. Fellows) over unfinished home renovation that Mr. Fellows' father was supposed to have completed for Plaintiff. At all relevant times, Plaintiff, Plaintiffs daughter Alyssa and Mr. Fellows lived together at a home Plaintiff owns at 188 Wrentham Street, Town of Ulster, New York.

15. Plaintiff was carrying some tools, that belonged to Mr. Fellows' father, up the stairs when Mr. Fellows attacked Plaintiff causing Plaintiff to fall face down onto the stairs. Plaintiff' s Daughter was present at the time and implored Mr. Fellows to stop his attack.

(continued...)

Fellows' entry into the home, he called for emergency assistance."  SAC ¶ 26.  He does not state in the SAC who he called, but he asserts in the Complaint that he "called the town of Ulster Police and requested they come to the home. Plaintiff also texted his sister and asked her to come to the home."  Compl., ¶ 25.

When the police, including Defendants Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, arrived at Plaintiff's residence, he informed them that Brandon Fellows had just broken into his home, broke down the door to his bedroom, and

---

[1](...continued)
16. At the end of the altercation Plaintiff told Mr. Fellows that if he wanted to return to the house he would need to have police present.

17. After the altercation Plaintiff went to his room on the second floor of his home and fearing that Mr. Fellows would return used a nightstand to barricade his door. Plaintiff only left his room to walk his dogs and use the lavatory.

18. Plaintiff took out a rifle from the closet in his bedroom where said rifle was usually stored. The rifle was owned by and registered to Plaintiff. The plaintiff had not loaded the rifle, however, a magazine was attached but not locked.

19. On January 24, 2019 at approximately 11: 30 A.M., Mr. Fellows returned to the Plaintiffs home, entered the premises, and began pounding on Plaintiff' s bedroom door. Mr. Fellows demanded to be let in but Plaintiff refused in fear for his safety.

20. Mr. Fellows eventually forced the door open and knocked over the nightstand that was barricading the door. Mr. Fellows saw the rifle leaning against the wall near the closet and went to grab it. Plaintiff also ran toward the rifle not wanting Mr. Fellows to gain possession of it.

21. Plaintiff got to the rifle first and put his arms around it but was forced to the ground by Mr. Fellows. During this struggle the rifle' s magazine was locked into place and a bullet was chambered.

22. While Plaintiff was face down on top of the rifle Mr. Fellows began repeatedly punching Plaintiff in the head and upper body. Mr. Fellows gained control of the rifle and began to drag Plaintiff toward the bedroom door.

23. Plaintiff grabbed the barrel of the rifle which discharged with Mr. Fellows' finger on the trigger. Neither Plaintiff nor Mr. Fellows were hit with the bullet.

24. Mr. Fellows then left the room with the rifle and handed it to his friend Leo who had driven Mr. Fellows to the home that morning.

5

then violently beat him. SAC ¶ 27. Nevertheless, "defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, completely disregarded Mr. Wilson's allegations, directed him to lay face-down on the ground, placed him in handcuffs and informed plaintiff that he was being placed under arrest for the attempted felony assault of B. Fellows." *Id.* ¶ 28. The SAC asserts that "Defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, violently impressed their knees and elbows into plaintiff's back, while he was compliantly lying face-down on the ground, as directed," *id.* ¶ 29, and that "Defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, dragged Mr. Wilson along the ground by his handcuffs to a police vehicle, which he was violently thrown into by defendants." *Id.* ¶ 30. The SAC alleges that "defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, were involved with the decision to arrest and incarcerate plaintiff without probable cause or failed to intervene when they observed plaintiff being arrested and prosecuted without probable cause and based upon fabricated evidence." *Id.* ¶ 70. Plaintiff further asserts that "defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, arrested and criminally charged Mr. Wilson with Attempted First-Degree Assault, for allegedly attempting to shoot B. Fellows with his rifle." *Id.* ¶ 32. Plaintiff also asserts that "Defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, arrested and prosecuted Mr. Wilson for Felonious Attempted First Degree Assault, despite the dearth of evidence to support such a charge, including the lack of any injury to B. Fellows, the absence of any corroborative witnesses or evidence, and the fact

that B. Fellows was holding the rifle, the purported instrumentality of the alleged crime, when the police arrived." *Id.* ¶ 33. The SAC asserts that "Defendant Faulkner was plaintiff's arresting officer, who signed the felony complaint against plaintiff, falsely affirming, under the penalty of perjury that plaintiff committed the felony of Attempted Assault in the First Degree, against B. Fellows, by attempting to shoot defendant with a rifle, when he knew such claims to be untrue." *Id.* ¶ 35.  Plaintiff contends that the allegations in the felony complaint "were based upon an investigation by defendant Faulkner and other law enforcement personnel from the Ulster Police Department, the Ulster County Sheriff's Office, Kingston Police Department and the New York State Police, named herein as defendants, John or Jane Doe 1-10, whose identities are not presently known to plaintiff." *Id.* ¶ 36.

The SAC alleges that sometime after Plaintiff's arrest, "defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, unlawfully entered and searched Mr. Wilson's residential home and property without his consent, a judicially authorized search warrant or any other legal justification to do so." *Id.* ¶ 31.  The SAC also asserts that after his arrest, Plaintiff "was removed to Kingston Hospital for emergency medical treatment for his myriad serious injuries, including five (5) broken ribs, a fractured shoulder blade, a concussion, bleeding on the brain and a laceration on his head that required fifteen (15) staples to treat." *Id.* ¶ 40.  Shortly after arriving at Kingston Hospital, Plaintiff was advised that he would need to be transferred "to another medical facility for proper treatment and care." *Id.* ¶ 41.  "Defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, then transported Mr. Wilson to the

7

Intensive Care Unit of a different hospital." *Id.* ¶ 42.  "For the full duration of Mr. Wilson's stays at both medical facilities, he was handcuffed to a bed or gurney by defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10." *Id.* ¶ 44   "Less than twenty-four (24) hours after his arrival at the other hospital, defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, removed Mr. Wilson from the hospital's custody, despite his unstable condition and remaining need for emergency medical attention and treatment." *Id.* ¶ 43.  Plaintiff contends that "Defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, prevented or caused Mr. Wilson to be denied access to proper medical attention or treatment." *Id.* ¶ 45.

Plaintiff also contends that after being removed from the second medical facility, he was "taken to the Town of Ulster Police station, where he was illegally detained and interrogated without counsel by defendant Moylan and defendant Faulkner." *Id.* ¶  46. Plaintiff "was eventually arraigned without legal counsel before a judge of the City of Kingston, who set bail at Two-Hundred-Thousand USD ($200,000.00), because of the recommendation by defendant Faulkner, plaintiff's arresting officer, and the fact that plaintiff's version of events, as well as the nature and extent of his present injuries and need for emergency medical attention, were not communicated to the arraigning judge." *Id.* ¶ 47.  Plaintiff was "eventually granted an opportunity to contest his bail conditions with the assistance of counsel, at which time B. Fellows offered testimony that was largely inconsistent with his initial statement to the police." *Id.* ¶  64.  Plaintiff's bail was reduced and he was released from custody on February 1, 2019.  *Id.* ¶ 65.

Plaintiff contends that after his release, "B. Fellows and Defendants, including S. Fellows, Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, knowingly offered false and perjurious testimony to the grand jury that was convened to determine whether there was reasonable cause to believe plaintiff had committed the crimes he stood accused of." *Id.* ¶ 66.  Plaintiff also testified before the grand jury. *Id.* ¶ 67.  The grand jury "voted to dismiss the charges against plaintiff."  *Id.* ¶ 68.  Plaintiff contends that this "is a clear indication of plaintiff's innocence and the obvious lack of probable cause to believe plaintiff committed any crime or arrestable offense, as such is the burden of proof required for a grand jury to return an indictment in the State of New York." *Id.* ¶ 68.

Plaintiff contends that prior to his arrest "but subsequent to the violent and brutal attack, B. Fellows contacted his uncle, defendant S. Fellows, who was either still actively employed or was recently retired from his over twenty-year career as a police officer and field training instructor with the Kingston Police Department." *Id.* ¶ 48.  Plaintiff alleges that "B. Fellows informed defendant S. Fellows that he had committed a series of heinous crimes against Mr. Wilson, including his illegal entry into Mr. Wilson's home and beating Mr. Wilson until he was rendered unconscious and near death, and that plaintiff had previously called the police, who were likely to arrive shortly." *Id.* ¶ 49.  Plaintiff further alleges:

> 51. Upon being informed of B. Fellows reprehensible conduct, defendant S. Fellows immediately reached out to his numerous close friends and contacts at the Kingston Police Department, Ulster County Sheriff's Office and Ulster Police Department, including Faulkner, Moylan, Sickler, Gramoglia and Reavy.

9

52. Defendant S. Fellows then informed defendants, including Faulkner, Moylan, Sickler, Gramoglia and Reavy, that B. Fellows had committed various serious felonies by severely beating plaintiff in plaintiff's own home.

53. Defendant S. Fellows then directed or importuned defendants, including Faulkner, Moylan, Sickler, Gramoglia and Reavy, to ensure that B. Fellows avoided arrest and subsequent criminal prosecution by any means necessary.

54. Defendants, including S. Fellows, Faulkner, Moylan, Sickler, Gramoglia and Reavy, then conspired with each other and B. Fellows, and various other law enforcement officers, including defendants John or Jane Doe 1-10, to conceal and suppress any evidence of B. Fellows' criminal activity, including plaintiff's allegation that B. Fellows violently attacked him in his own bedroom after breaking down the bedroom door, the physical evidence that corroborated plaintiff's allegations, namely plaintiff's broken bedroom door, plaintiff's blood spatter in the bedroom, the substantial injuries to plaintiff, the glaring absence of any injury to B. Fellows, and the fact that plaintiff called for emergency assistance prior to B. Fellows.

55. Defendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, also withheld materially relevant information from the prosecuting attorneys, including B. Fellows' numerous recent prior arrests or convictions for drugs and assault, the fact that B. Fellows had previously attacked plaintiff the day prior to the subject incident, that they were being unduly influenced because of their relationship with defendant S. Fellows, that the alleged instrumentality of the assault charge against plaintiff, the firearm, was recovered from B. Fellows, that Mr. Wilson made credible allegations against B. Fellows for illegally entering his home and physically assaulting him, that Mr. Wilson sustained serious physical injuries, that B. Fellows did not sustain any physical injury, and that all of the evidence gathered was unambiguously indicative of plaintiff's innocence and B. Fellows' guilt.

56. Defendants, including S. Fellows, Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, also conspired with each other and B. Fellows to fabricate evidence against  plaintiff, namely with respect to the false account that depicted plaintiff as the aggressor and criminal suspect, who attempted to shoot B. Fellows with a rifle, as well as additional false evidence tending to support said fabricated account, despite defendants' full awareness that such an event never transpired and that there existed no reasonable cause to believe plaintiff committed any crime or violation of the law.

57. B. Fellows and Defendants, including, S. Fellows, Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, therefore, caused false, fabricated, incomplete and misleading information to be forwarded to

the Ulster County District Attorney's Office, so that plaintiff would be criminally prosecuted in the absence of probable cause.

58. B. Fellows and Defendants, including S. Fellows, Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, committed many acts in furtherance of said conspiracy, included instructing and directing B. Fellows regarding his interaction and statements to law enforcement, the immediate handcuffing and removal of plaintiff from the scene, the conveyance of fabricated evidence against plaintiff to the Ulster County District Attorney's Office, the suppression of any evidence that would either exculpate plaintiff or inculpate B. Fellows, as well as numerous other gross deviations from proper police procedure.

59. Defendants, including S. Fellows, Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, instructed B. Fellows how to avoid making any inculpatory statements, while also providing law enforcement with sufficient information, albeit patently false, to justify the arrest and criminal prosecution of plaintiff.

60. Defendants, including S. Fellows, Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, conspired with each other with B. Fellows, via the use of telephonic electronic or in-person communication, including verbal and written communication methods, via the use of their personal or official police issued cellular phones or radios.

61. Defendants, including S. Fellows, Faulkner, Moylan, Sickler, Gramoglia, Reavy, and John or Jane or Doe 1-10, along with B. Fellows, caused the arrest and criminal prosecution of plaintiff, not because they believed him to be guilty of any crime, but because of their desires to shield B. Fellows from any criminal liability and prevent any criminal charges from being levied against him.

*Id.* ¶¶ 51-61.

Plaintiff alleges that "[t]he Ulster Police Department, the Town and County of Ulster, and their respective policy and decision makers and supervisors have imposed or acquiesced to policies or customs with the Ulster Police Department and Ulster County Sheriff's Office that resulted in plaintiff's arrest and criminal prosecution without probable cause or reasonable suspicion." *Id.* ¶ 69.  He also alleges that "[t]he County and Town of Ulster, and their respective policymakers, officials or supervisors have imposed, tacitly

11

approved or acquiesced to policies, customs, or patterns and practices within the Ulster

Police Department and Ulster County Sheriff's Office that resulted in Plaintiff's arrest and

criminal prosecution without probable cause or reasonable suspicion." *Id.* ¶ 71. In addition,

Plaintiff alleges that "[t]he The Town and County of Ulster, and their respective

policymakers or supervisors have failed to provide adequate training regarding the

identification of probable cause, reasonable suspicion or the appropriate amount of force

to be used." *Id.* ¶ 72. The SAC alleges that "Defendants' actions, pursuant to plaintiff's

underlying arrest, which occurred without even the semblance of probable cause, were so

blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts

by the policymakers or supervisors of the Town and County of Ulster, as well as their

deliberate indifference towards the rights of any individuals, who may come into contact

with defendants, should be inferred, because such flagrant deprivations of constitutionally

protected rights could not and would not occur without the tacit approval or deliberate

indifference regarding the commission of such violations by the policymakers or

supervisors of the Town and County of Ulster." *Id.* ¶ 73.

The SAC asserts the following nineteen causes of action:

1) unlawful search & seizure under New York law;

2) unlawful search & seizure claims under 42 U.S.C. § 1983;

3) false arrest and false imprisonment under New York State law;

4) false arrest and false imprisonment claims under 42 U.S.C. § 1983;

5) state law assault and battery;

6) excessive force under section 1983;

7) malicious prosecution under state law;

12

8) malicious prosecution under section 1983;

9) abuse of process under state law;

10) abuse of process under section 1983;

11) denial of due process under state law;

12) denial of due process & a fair trial under section 1983;

13) unconstitutional conditions of confinement under section 1983;

14) deliberate indifference to serious medical needs under section 1983;

15) state law negligence or gross negligence in providing access to medical care;

16) state law failure to intervene;

17) failure to intervene under section 1983;

18) New York state law negligent hiring, training, retention & supervision; and

19) *Monell* municipal liability claim under section 1983.

*Id.* ¶¶ 80-204.  Most of Plaintiff's state law claims are asserted against "all defendants" with the exception of the negligent hiring, training, retention & supervision claim that is asserted against "Defendants Town & County," his section 1983 claims are asserted against the "individual defendants," and his *Monell* municipal liability claims are asserted against "Defendants Town & County."

## III.   DISCUSSION

### a.  Town Defendants' Motion, Dkt. Nos. 43, 45

#### 1.  Unlawful Search and Seizure Claims

Plaintiff asserts in his First and Second Causes of Action that the "Defendants subjected Plaintiff and his property to unreasonable searches and seizures without a valid

13

warrant and without reasonable suspicion or probable cause do so."  SAC ¶¶ 81, 89.  That much of these claims asserting that Defendants seized Plaintiff without a warrant, reasonable suspension, or probable cause are redundant of Plaintiff's false arrest claims, and will be analyzed as such.

### A.  False Arrest

In support of their motion to dismiss the false arrest claims, the Town Defendants point to the Town of Ulster Police Department's Incident Report from the date in question, Dkt. 5-2.  Defendants contend that the Incident Report is incorporated by reference into the SAC because Plaintiff alleges in the SAC that he called "for emergency assistance" sometime after Brandon fellows entered into his home, and he asserted in the Complaint that he called the Town of Ulster Police Department after Fellow purportedly broke into his house.  Defendants argue that the Incident Report establishes probable cause for Plaintiff's arrest.[2]

If the arresting officers' knowledge as to what is alleged to have occurred at the time they arrested Plaintiff is what is stated in the Incident Report, then there would seemingly be a sufficient reason to dismiss the false arrest claims. *See  Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)("The existence of probable cause to arrest constitutes

_____

[2]This Incident Report indicates that the police were summoned to Plaintiff's residence by a 911 call from Brandon Fellows in which he reported a domestic dispute during which he got into a fight with a male individual and the male individual fired a weapon at him.  *Id.*  The Incident Report further indicates that Fellows was able to grab the weapon and leave the residence with the weapon, but it was unknown whether other weapons were in the residence. *Id.*  The Incident Report also indicates that Fellows was standing at the end of the driveway. *Id.*  This last allegation appears to be consistent with Plaintiff's allegation that "B. Fellows was holding the rifle, the purported instrumentality of the alleged crime, when the police arrived." SAC  ¶ 33.

justification and is a complete defense to an action for false arrest [.]")(internal citation and quotation omitted); *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018)("[P]robable cause [is] an absolute defense to the action."); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)(In evaluating the probable cause determination, the Court "consider[s] the facts available to the officer at the time of the arrest.")(citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996)); *Miloslavsky v. AES Eng'g Soc'y*, 808 F.Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993)("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness."); *Acquah v. City of Syracuse*, No. 5:18-CV-1378 (LEK/DEP), 2019 WL 3975463, at *3 (N.D.N.Y. Aug. 22, 2019)("Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. The officer may have probable cause even if he relies on information that turns out to be mistaken, so long as it was reasonable to rely on that information at the time." )(internal quotation marks and citations omitted); *Curley v. Vill. of Suffern*, 268 F.3d 65,70 (2d Cir.  2001)("[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)(The fact that a plaintiff may ultimately be proven innocent is irrelevant to the question whether probable cause existed at the time of arrest.).  However, and although it appears that Plaintiff amended his pleading to insulate himself from the use of the Incident Report (which was raised as a

15

defense to these claims on a pre-amendment motion to dismiss), the Incident Report is

not incorporated by reference in the SAC because it is based on Brandon Fellows' call to

911 – not on Plaintiff's call for "emergency assistance" or to the police.

At this stage of the proceedings, and without the Incident Report, the only relevant

allegation to the arrest is that Plaintiff told the police that Brandon Fellows broke into his

house and violently beat him yet the police arrested Plaintiff for assault.[3]  Under these

facts, assumed to be true for purposes of this motion, there did not appear to be probable

cause to arrest Plaintiff, nor are there sufficient undisputed facts upon which to grant the

individual defendants qualified immunity for Plaintiff's arrest  at this time .  Further,

although Defendants argue that "facts demonstrate that [Plaintiff's] seizure was objectively

reasonable for the purpose of transporting Plaintiff to the hospital," a reasonable inference

could drawn from the facts that the Defendants kneed and elbowed Plaintiff while he was

on the ground, dragged him by his handcuffs to a police car, and violently threw him in the

police car that the police seized Plaintiff not because of concern for his physical health but

to arrest him for a crime.

That being the case, however, Defendants also argue that the false arrest claims

must be dismissed because Plaintiff has not specified as to which individual defendant

arrested Plaintiff.  The Defendants have satisfied their light burden of establishing their

entitlement to partial relief on this argument.

 "An individually named defendant cannot be held liable for a plaintiff's alleged

Section 1983 claim absent personal involvement in the alleged constitutional deprivation."

------

[3]The Court notes that Judge Stewart determined that Plaintiff could not amend his
pleading to bring a civil conspiracy claim because it would be futile.

*Johnson v. City of New York*, No. 1:15-CV-8195-GHW, 2017 WL 2312924, at \*10 (S.D.N.Y. May 26, 2017)(citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). "In the context of a claim for false arrest, each individual must have been personally involved in the arrest in order to be held liable." *Id.* (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Id.* (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)(citation omitted)).

> As a corollary to the personal-involvement rule, complaints that rely on "group pleading" and "fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Adamou v. Cty. of Spotsylvania, Va.*, No. 12-cv-7789 (ALC), 2016 WL 1064608, at \*11 (S.D.N.Y. Mar. 14, 2016)(citing *Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001)(observing that Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests," and that a complaint fails to meet that minimum where it "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct"); *see also Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015) ("Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations."), *vacated in part on other grounds*, 655 Fed. Appx. 25 (2d Cir. 2016); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) ("[I]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]." (internal quotation marks and citation omitted) (alterations in original)); *cf. Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

*Id.*

Here, Plaintiff's group pleading in the SAC[4] fails to plausibly establish personal involvement of any particular defendant on the Section 1983 false arrest claims, or provide fair notice to the defendants of the grounds upon which any of the false arrest claims rest. Indeed, Plaintiff's allegations as to his arrest involves fifteen police officers, *see* SAC ¶ 28 ("[D]efendants, including Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, completely disregarded Mr. Wilson's allegations, directed him to lay face-down on the ground, placed him in handcuffs and informed plaintiff that he was being placed under arrest for the attempted felony assault of B. Fellows."), some of whom Plaintiff cannot even identify by the police agency for which they worked. *See id.* ¶ 19 ("At all relevant times, defendants, John or Jane Doe 1-10, were police officers, detectives, sheriffs, deputy sheriffs, supervisors, policymakers or officials employed by the Town of Ulster, County of Ulster or the State of New York. At this time, plaintiff does not know the true names or identities of John or Jane Doe 1-10, as such knowledge is presently within the exclusive possession of the defendants.").  While Plaintiff indicates in another part of the SAC that "Defendant Faulkner was plaintiff's arresting officer," *id.*  ¶ 35, that allegation does not clarify the roles the other fourteen individual defendants played in Plaintiff's arrest.  Accordingly, Defendants' motion is granted in part.  The false arrest claims and that much of the unlawful search and seizure claims asserting that Plaintiff was improperly seized as against Defendants Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10, are dismissed.

### B.  Illegal Search

---

[4]Plaintiff asserts the false arrest claims against "all individual defendants" on the Section 1983 claims and against "all defendants" on the state law claims.

18

Plaintiff's illegal search claims suffer from the same lack of specificity as to the roles the individual defendants allegedly played in the purported search.  *See* SAC ¶ 31.  The Town Defendants challenge the sufficiency of the allegations in this regard.  *See* Dkt. No. 45-1, at 14-15.  Defendants have met their light burden of demonstrating facial merit to their argument demonstrating entitlement to dismissing the illegal search claims for this lack of specificity as to the roles the individual police officer defendants played in the purported search. Accordingly, the illegal search claims are dismissed as to all Town Defendants.

### 2.  Excessive Force and Assault and Battery

Plaintiff's excessive force claims brought under Section 1983 and his assault and battery claims brought under New York state law suffer from the same lack of specificity as to the roles the Defendants allegedly played in the allegedly assaultive behavior.  *See* SAC ¶¶ 28-30.  The Town Defendants challenge the sufficiency of the allegations in this regard.  *See* Dkt. No. 45-1, at 17.  Defendants have met their light burden of demonstrating facial merit to their argument to dismiss the excessive force and assault and battery claims for lack of specificity as to the roles the police officer defendants played in the purportedly assaultive conduct. Accordingly, the  excessive force and assault and battery claims illegal search claims are dismissed as to all Town Defendants.

### 3.  Malicious Prosecution

The Town Defendants move to dismiss Plaintiff's malicious prosecution claim brought under Section 1983 and New York law.  Defendants have met their lightened burden of establishing facial merit to their arguments seeking to dismiss these claims.

"'In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law.'" *McGrier v. City of New York*, 849 F. App'x 268, 270 (2d Cir. 2021)(quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (internal citations omitted)).  "The elements of a malicious prosecution claim under New York law are '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Id.* (quoting *Manganiello*, 612 F.3d at 161 (internal quotation marks omitted)).

The existence of probable cause is a complete defense to a claim of malicious prosecution in New York. *Id.*  "Probable cause may . . . exist where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it. *Manganiello*, 612 F.3d at 161 (citing *Hill v. California*, 401 U.S. 797, 803-04 (1971)).  The existence of probable cause must be determined by reference to the totality of the circumstances. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Plaintiff sought to include a cause of action for conspiracy related to the purported improper behavior of Steven Fellows.  Although Judge Stewart denied the motion to amend to add a conspiracy cause of action, Plaintiff nonetheless included in the SAC the factual allegations upon which the conspiracy was based. However, despite Plaintiff's allegations of a conspiracy and the fact that the charges against him were ultimately dismissed, Plaintiff's causes of action for malicious prosecution are belied by the SAC.

20

Specifically Plaintiff alleges that, at his grand jury proceeding, Brandon Fellows "offered testimony that was largely inconsistent with his initial statement to the police."  SAC at ¶ 64.  As a preliminary matter, this allegation aligns with the defendants' position that they relied upon statements from Brandon Fellows and, as such, their conduct was objectively reasonable under the circumstances.  Of further significance is that Plaintiff's entire argument for malicious prosecution rests upon the alleged "fact" that the defendants knew that Brandon Fellows was the "guilty" party but, at the behest of Steven Fellows, fabricated or otherwise withheld evidence. Aside from the allegation contained in paragraph 64,[5] however, the SAC omits any direct interaction between Brandon Fellows and the moving defendants. As defendants argue, Brandon Fellows could not have offered testimony which was "largely inconsistent with his initial statement to the police" unless he did, in fact, speak to the police and claim that he had been attacked by Plaintiff. Thus, Plaintiff's own pleadings tacitly acknowledge that the defendant officers relied upon information from Brandon Fellows; the fact that such information may have been untrue or that the officers may have been otherwise mistaken is irrelevant.  The claims for malicious prosecution are dismissed.

### 4.  Malicious Abuse of Process

The Town Defendants move to dismiss Plaintiff's malicious abuse of process claims.  This part of the motion will be granted.

"In the criminal context, malicious abuse of process is by definition a denial of

---

[5](64. Plaintiff was eventually granted an opportunity to contest his bail conditions with the assistance of counsel, at which time B. Fellows offered testimony that was largely inconsistent with his initial statement to the police.)

procedural due process. . . . Procedural due process forbids the use of legal process for a wrongful purpose." *Abreu v. Romero*, 2010 WL 4615879, at *8 (S.D.N.Y.  Nov. 9, 2010)(citation omitted).  To state a claim for malicious abuse of process, Plaintiff must prove Defendant: 1) employed regularly issued legal process to compel performance or forbearance of some act; 2) with intent to do harm without excuse or justification; 3) to obtain a collateral objective outside the legitimate ends of the process. *See Devarnne v. City of Schenectady*, 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011) (citing *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).

"The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y.1995) (citing *PSI Metals v. Firemen's Ins. Co.*, 839 F.2d 42, 43 (2d Cir.1988)).  In other words, Plaintiff "must claim that [Defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77.  "In New York . . . wrongful [collateral] purposes have included economic harm, extortion, blackmail, and retribution." *Ketchuck v. Boyer*,  2011 WL 5080404 at *7 (N.D.N.Y. Oct. 25, 2011); *see Abreu*, 2010 WL 4615879, at *8; *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 404 (1975).  "Naked conclusory allegations" cannot support a claim for malicious abuse of process. *Oquendo v. City of New York*, No. 14-CV-2582 (ENV/RLM), 2017 WL 6729850, at *7 (E.D.N.Y. Nov. 15, 2017), *aff'd*, 774 F. App'x 703 (2d Cir. 2019); *see Duamutef v. Morris*, 956 F. Supp. 1112, 1119 (S.D.N.Y. 1997) ("[A] complaint which alleges [a collateral motive] in wholly conclusory terms may safely be dismissed on the

pleadings alone.") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Plaintiff had previously attempted to include a cause of action for conspiracy predicated upon the purported actions of Steven Fellows. The motion to include the conspiracy cause of action was denied because the "conclusory claim alleging a conspiracy," without personal knowledge of facts, was insufficient to withstand a motion to dismiss. *See* Dkt. No. 21 at pages 6-7. However, as Defendants argue, it is those same conclusory allegations upon which Plaintiff bases his claims for malicious abuse of process; without the conclusory allegations that Brandon Fellows contacted Steven Fellows, who thereafter "directed or importuned" the moving-defendants to act with an improper purpose, there are no facts which support a cause of action for malicious abuse of process. For the same reason that the conspiracy causes of action could not be added to the pleadings, the causes of action for malicious abuse of process must be dismissed because they rest upon "conclusory allegations" which are wholly rooted in speculation.

### 5. Denial of the Right to a Fair Trial/Denial of Due Process

The Town Defendants seek to dismiss Plaintiff's claims for the denial of the right to a fair trial and denied of due process. Defendants have demonstrated their entitlement to relief dismissing these claims.

"A criminal defendant's 'right to a fair trial' is enshrined in the Due Process Clause of the Fourteenth Amendment." *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863 (KMK), 2021 WL 1164185, at *35 (S.D.N.Y. Mar. 26, 2021)(citing *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020)). "This right is violated 'when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" *Frost*, 980 F.3d at 244 (brackets omitted)(quoting *Ricciuti*

*v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  "Despite the 'nomenclature, a criminal defendant's right to a fair trial protects more than the fairness of the trial itself,' and, as relevant here, 'a criminal defendant can bring a fair trial claim even when no trial occurs at all.'" *Falls*,  2021 WL 1164185, at *35 (quoting *Frost*, 980 F.3d at 249).  A claim relating to the denial of a right to a fair trial requires a plaintiff to prove that 1) an investigating officer, 2) fabricated evidence, 3) that was likely to influence a jury's decision, 4) forwarded that information to prosecutors, and 5) that the plaintiff suffered a deprivation of liberty as a result. *Bailey v. City of New York*, 79 F. Supp.3d 424, 466 (E.D.N.Y. 2015)(citing *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012)). "Thus, Plaintiff is required to establish not only that the police fabricated evidence, but also that this evidence *caused* his deprivation of liberty." *Falls*,  2021 WL 1164185, at *36 (emphasis in original, citations omitted).

Plaintiff has not alleged any deprivation of liberty which flowed from any fabricated evidence which was forwarded to prosecutors.  Rather, Plaintiff alleges that he was arraigned before a Judge in the City of Kingston, with bail set at $200,000.00, based upon the recommendation of Defendant Faulkner. *See* Dkt. 42 at ¶ 47.  There is no indication that the recommendation was the result of any action by a prosecutor.  Despite only naming Defendant Faulkner as involved in the City Court bail determination, Plaintiff alleges this cause of action "against all defendants" despite not making any factual allegations to support the claim against all of the defendants.  Further, at a subsequent hearing, Plaintiff's bail was reduced and he was released; there is no allegation of any prosecutors who relied upon specific information relayed by the defendants. *See* SAC at ¶ 64-65.  Plaintiff later testified before the grand jury, which decided not to indict him, and

the charges were dismissed.  *See id.* at ¶ 67-68.

Plaintiff does not offer any specific allegation of evidence which was fabricated or forwarded to prosecutors and ultimately resulted in a deprivation of liberty but, rather, merely offers broad allegations of evidence which was fabricated or concealed. Such conclusory allegations are insufficient to state causes of action for the denial of the right to a fair trial or the denied of due process. Furthermore, based upon the only specific allegations in the SAC, Plaintiff's bail was not set at the recommendation of any prosecutor but, rather, was set solely because of Defendant Faulkner's recommendation. Based upon the facts in the SAC, because Plaintiff suffered no deprivation of liberty as a result of any prosecutor, he has failed to state viable causes of action for Denial of the Right to a Fair Trial or Denial of the Right to Due Process.  These claims must be dismissed.

### 6.  Conditions of Confinement/Deliberate Indifference to Medical Needs/Negligent Denial of Medical Attention

Defendants also move to dismiss Plaintiff's unconstitutional conditions of confinement and deliberate Indifference to his medical needs claims.  The motion in this regard is granted.

Although confinement conditions are typically examined under the Eighth Amendment, pretrial detainees' claims are examined under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Windley v. Westchester County*, 2021 WL276542 at *2 (S.D.N.Y. 2021).  "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions."

25

*Darnell*, 849 F.3d at 29 (citing *Benjamin v. Fraser*, 343 F.3d 35, 50 (2d Cir. 2003)).

Benjamin, 343 F.3d at 50).   "A Fourteenth Amendment unconstitutional conditions of

confinement test requires the detainee to satisfy 'an 'objective prong' showing that the

challenged conditions were sufficiently serious to constitute objective deprivations of the

right to due process, and a 'subjective prong'—perhaps better classified as a 'mens rea

prong' or 'mental element prong'—showing that the officer acted with at least deliberate

indifference to the challenged conditions.'"   *Windley*, 2021 WL276542 at *2 (quoting

*Darnell*, 849 F.3d at 29).

> Regarding the objective prong, the conditions of confinement are deemed
> sufficiently serious if the detainee can show that "the conditions, either alone
> or in combination, pose an unreasonable risk of serious damage to his
> health." [*Darnell*, 849 F.3d at 30] (quoting *Walker v. Schult*, 717 F.3d 119,
> 125 (2d Cir. 2013)). There is no "static test" to determine whether a
> detainee's conditions of confinement were sufficiently serious to constitute a
> deprivation of the right to due process; "instead, 'the conditions themselves
> must be evaluated in light of contemporary standards of decency.'" Id.
> (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). At the motion
> to dismiss stage, the Court must determine whether the detainee's
> allegations lead to the plausible inference that the detainee was "deprived of
> [his] 'basic human needs—e.g., food, clothing, shelter, medical care, and
> reasonable safety'" or whether the detainee was "exposed 'to conditions that
> pose an unreasonable risk of serious damage to [his] future health.'" *Jabbar
> v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (quoting *Phelps v. Kapnolas*, 308
> F.3d 180, 185 (2d Cir. 2002)).

*Windley*, 2021 WL 276542, at *3.

To establish a claim of deliberate indifference to a serious medical condition, a

plaintiff "must meet two requirements: (1) that [the] [p]laintiff[ ] had a serious medical need

..., and (2) that the [d]efendants acted with deliberate indifference to such need[ ]."

*Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019) (first citing *Estelle v. Gamble*,

429 U.S. 97, 105 (1976); and then citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir.

2017)). "Deliberate indifference requires, at a minimum, 'culpable recklessness, *i.e.*, an act

or a failure to act that evinces a conscious disregard of a substantial risk of serious harm.'"

*Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021)(quoting *Charles*, 925 F.3d at 87)).

To prevail on a Fourteenth Amendment deliberate indifference claim, a plaintiff must prove

"(1) that the alleged deprivation [of medical treatment] 'pose[d] an unreasonable risk of

serious damage to his health,' and (2) 'that the defendant-official acted intentionally to

impose the alleged condition, or recklessly failed to act with reasonable care to mitigate

the risk that the condition posed'" *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020)

(second alteration in original) (quoting *Darnell,* 849 F.3d at 30, 35)).

Plaintiff alleges that, upon being arrested, Defendants transported him to Kingston

Hospital, at which time he was advised that he would need "proper treatment and care" at

a different facility.  SAC at ¶ 41. Defendants are then alleged to have transported Plaintiff

to the intensive care unit at a separate facility. *Id.* at ¶ 42.  Plaintiff further alleges that

Defendants removed him from the second hospital "despite his unstable condition and the

remaining need for emergency medical attention and treatment."  However, as Defendants

point out, there is no allegation that any doctor advised Plaintiff or any of the defendants

about Plaintiff's need for ongoing treatment or how his removal could be detrimental to his

health. Further, Plaintiff offers no allegations plausibly indicating that being handcuffed to

a bed or gurney while at the hospital posed an unreasonable risk of serious damage to his

health.  Thus, as Defendants contend, Plaintiff offers nothing more than conclusory

allegations to demonstrate that the defendants acted with deliberate indifference or that he

was otherwise subjected to "unconstitutional conditions of confinement."  Furthermore, as

Defendants contend, the denial of medical attention claims are belied by the factual

27

allegations that the defendants transported Plaintiff to two separate facilities for the purpose of securing "proper" treatment and, as such, he has not pled facts sufficient to demonstrate that the defendants acted with sufficiently culpable states of mind. Accordingly, Plaintiff's unconstitutional conditions of confinement and deliberate Indifference to his medical needs claims are dismissed.

To the extent the Town Defendants argue that "there is no allegation that any doctor advised Plaintiff or any of the defendants about this need for ongoing treatment or how his removal could be detrimental to his health," Dkt. No. 45-1 at 24, the Court applies this argument to Plaintiff's negligence claim where he alleges "Defendants knew or should have known that their conduct posed a danger to Plaintiff's health or safety."  SAC ¶ 178. Without an allegation plausiblely supporting the conclusion that a medical provider advised Plaintiff or any of the defendants about Plaintiff's need for ongoing treatment or how his removal could be detrimental to his health, the state law negligence claim must be dismissed.

### 7.  Failure to Intervene

For the reasons discussed in connection with Plaintiff's excessive force and assault and battery claims, Plaintiff fails to plead facts plausibly establishing the individual defendants' personal involvements in the failure to intervene claims, or enough facts to put the defendants on notice of the bases of these claims against them.  Accordingly, the failure to intervene claims are dismissed.

### 8.  Negligent Hiring, Retention, and Supervision

Defendants argue that "[i]t is well settled that a cause of action for negligent hiring, retention, and supervision cannot continue where the defendant is alleged to have been

acting in the scope of his employment." Dkt. No. 45-1 at 25-26 (citing *Grant v. City of Syracuse*, No. 5:15-CV-445 (LEK/TWD), 2017 WL 5564605, at *16 (N.D.N.Y. Nov. 17, 2017)). Defendants contend that because Plaintiff alleges that the individual defendants were acting in "the capacity of an agent, servant, and employee" of the Defendant-Town, *see* SAC ¶ 15-20, the claims for negligent hiring, retention, and supervision should be dismissed. The Court agrees. *See Grant*, 2017 WL 5564605, at *16.[6] Plaintiff's claim for negligent hiring, retention, and supervision are dismissed.

### 9. *Monell* Liability

Town Defendants move to dismiss Plaintiff's municipal policy claim because Plaintiff fails to plausibly allege facts that would permit recovery under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The Court agrees.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, a municipality is liable when "execution of a

---

[6]In *Grant*, Judge Kahn wrote:

Plaintiffs' claim under New York law for negligent hiring and supervision must be dismissed, because Defendants have conceded that the Arresting Officers were acting within the scope of their employment. Mem. at 32; *see also Rosseti v. Bd. of Educ. of Schalmont Cent. Sch. Dist.*, 716 N.Y.S.2d 460, 461–62 (App. Div. 2000) ("After the School District stipulated that Marshall was acting within the scope of her employment, these causes of action are unnecessary for the purposes of imposing liability for plaintiff's damages against the School District."). "Where an employee is acting within the scope of her employment, the employer is liable under the theory of respondeat superior [for state law claims] and no claim may proceed against the employer for negligent hiring or retention." *Murns v. City of New York*, No. 00-CV-9590, 2001 WL 515201, at *5 (S.D.N.Y. May 15, 2001) (quoting *Rossetti*, 716 N.Y.S.2d at 461).

2017 WL 5564605, at *16.

government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.  "To hold

a municipality liable in such an action, 'a plaintiff is required to plead and prove three

elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3)

a denial of a constitutional right.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.

1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).  Where, as here,

there is no formal policy officially promulgated by the municipality in issue, municipal policy

may arise from

> action taken by the official responsible for establishing policy with respect to a
> particular issue, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986);
> unlawful practices by subordinate officials so permanent and widespread as to
> practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112,
> 127–30 (1985); or a failure to train or supervise that amounts to "deliberate
> indifference" to the rights of those with whom the municipality's employees interact,
> *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

*Hill v. Cty. of Montgomery*, No. 9:14-CV-00933 (BKS/DJS), 2019 WL 5842822, at *17

(N.D.N.Y. Nov. 7, 2019).

A single act by a municipality may amount to municipal policy "if ordered by a

person 'whose edicts or acts may fairly be said to represent official policy.'" *Rookard v.

Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)(quoting *Monell*, 436 U.S. at 694);

*see Montero v. City of Yonkers, New York*, 890 F.3d 386, 403 (2d Cir. 2018)("[W]hen a

municipality 'chooses a course of action tailored to a particular situation,' this may also

'represent[ ] an act of official government 'policy' as that term is commonly

understood.'")(quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir.

2004), in turn quoting *Pembaur*, 475 U.S. at 480-81).  "Where an official has final authority

over significant matters involving the exercise of discretion, the choices he makes

represent government policy." *Rookard*, 710 F.2d at 45*; see Montero*, 890 F.3d at 403 ("'[E]ven a single action by a decisionmaker who possesses final authority to establish municipal policy with respect to the action ordered' may deprive the plaintiff of his or her constitutional rights.")(quoting *Amnesty Am.*, 361 F.3d at 126, in turn quoting *Pembaur*, 475 U.S. at 481). *"An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Rookard*, 710 F.2d at 45 (citation omitted). "An allegation of policy-making authority thus requires proof of the official's scope of employment and his role within the municipal or corporate organization." *Id.* (citation omitted). "An official's title, though not dispositive of his authority to make policy, is relevant for the inferences fairly to be drawn therefrom." *Id.* (citation omitted). Here, Plaintiff has not asserted in other than conclusory fashion that a municipal policy maker was involved in the lone remaining alleged constitutional violation - Defendant Faulkner's false arrest.

"When a non-decisionmaker committed the constitutional violation, however, the plaintiff must show that the decisionmaker ordered or ratified such a subordinate's conduct or 'was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions.'" *Montero*, 890 F.3d at 403 (quoting *Amnesty Am.*, 361 F.3d at 126); *see Bowers v. City of Salamanca*, No. 20-CV-1206-LJV, 2021 WL 2917672, at *3 (W.D.N.Y. July 12, 2021)("'[A] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials,' such as 'the persistent failure to discipline subordinates who violate [persons'] civil rights.'")(quoting *Zahra*, 48 F.3d at 685). "[W]here senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held

liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts." *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980).  However, to state a *Monell* claim premised on ratification, a plaintiff must plausibly allege that the unconstitutional conduct which the municipal policymaker ratified was part of "a pattern of constitutionally offensive acts," rather than an isolated event. *Ocasio*, 513 F. Supp. 3d at 325.  "In order to state a claim for ratification of repeated unconstitutional acts, there must be 'well-pleaded allegations in the complaint supporting the inference that the City employed a policy of ratifying the unlawful conduct of its officers': a 'single instance' of ratification is insufficient." *Id.* (quoting *Waller v. City of Middletown*, 89 F. Supp. 3d 279, 287 n.3 (D. Conn. 2015), in turn quoting *Batista*, 702 F.2d at 398).  Plaintiff has not alleged facts plausibly indicating that Faulkner's false arrest was part of a pattern of constitutionally offensive acts, and his conclusory allegations to the contrary are insufficient.

Plaintiff has also not adequately alleged a *Monell* claim premised on a theory of acquiescence by a policy maker or senior supervisory personnel.  "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)(quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (internal citation omitted).  "To prove such deliberate indifference, plaintiffs must show that the need for more or better supervision to protect against constitutional violations was obvious." *Ocasio*, 513 F. Supp. 3d at 325 (citing *Canton*, 489 U.S. at 390).  "'An obvious need may

be demonstrated through proof of repeated complaints of civil rights violations [and] deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.'" *Id.* (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995), in turn citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Furthermore, under *Zahra* and the cases it cites*,* municipal policy arises from supervisory officials' conduct involving "persistent failure to discipline subordinates who violate [persons'] civil rights," "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force," and "where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps." *See Zahra*, 48 F.3d at 685.[7]  Indeed, in concluding that "Zahra failed to establish that the Town had a municipal policy that rendered it liable for any deprivation of Zahra's constitutional rights," the Circuit cited to *Turpin* in concluding that "Zahra did not present evidence demonstrating that the Town's purported inaction constituted deliberate indifference or

---

[7]In *Zahra*, the Second Circuit stated:

We have previously ruled that a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials, *Turpin v. Mailet*, 619 F.2d 196, 200 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), and that "municipal inaction such as the persistent failure to discipline subordinates who violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct," *Batista*, 702 F.2d at 397. *See also* [*Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)] (policy may be inferred from "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights"); *Turpin*, 619 F.2d at 201 ("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts").

48 F.3d at 685.

tacit encouragement of a violation of his constitutional rights." *Zahra*, 48 F.3d at 685

(citing *Turpin*, 619 F.2d at 201).  *Turpin* stands for the proposition that municipal liability

can arise from senior supervisory personnel's inaction in situations concerning a pattern of

constitutionally offensive conduct.  *See Turpin*, 619 F.2d at 201 ("where senior personnel

have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail

to take remedial steps, the municipality may be held liable for a subsequent violation if the

superior's inaction amounts to deliberate indifference or to tacit authorization of the

offensive acts"); *Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020)("'[E]ven if

a policy can be inferred from omissions of a municipality, such as where it acquiesces in a

pattern of illegal conduct, such a policy cannot be inferred from the failure of those in

charge to discipline a single police officer for a single incident of illegality'; instead, there

must be 'more evidence of supervisory indifference, such as acquiescence in a prior

pattern of conduct.'")(quoting *Turpin*, 619 F.2d at 201-02)).

    Here, there are no plausible allegations of a persistent failure to discipline

subordinates or a pattern of constitutionally offensive acts by Town police officers.

Instead, Plaintiff's remaining claims involve the singular event of his arrest. Under these

circumstances, the acts or omissions of some policy maker or other senior supervisory

personnel do not represent official City policy.  *See Deferio*, 770 Fed. Appx. at 591

(holding that a *Monell* claim premised on a theory of ratification of illegal acts requires

allegations that constitutional liberties were "systematically" violated: a "single incident of

illegality" cannot, by itself, evidence a "custom")(quoting *Turpin*, 619 F.2d at 202); *Ocasio*,

513 F. Supp. 3d at  325 ("Plaintiffs have not plausibly alleged that the unconstitutional

conduct which Hedworth ratified was part of a pattern of constitutionally offensive acts,

rather than an isolated event. In order to state a claim for ratification of repeated unconstitutional acts, there must be well-pleaded allegations in the complaint supporting the inference that the City employed a policy of ratifying the unlawful conduct of its officers: a single instance of ratification is insufficient.")(internal quotation marks and citation omitted).

Plaintiff has not plausibly alleged that the purportedly unconstitutional conduct of arresting and charging him despite his claims of innocence amounted to ratification by a policy maker or senior supervisory personnel of "a pattern of constitutionally offensive acts," rather than an isolated event.  Plaintiff's conclusory allegation that a policy should be inferred because the "flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the Town and County of Ulster," SAC ¶ 73, is insufficient. *See Odom v. Poirier*, 2004 WL 2884409, at *13 (S.D.N.Y. 2004) ("[I]nferences must be supported by 'explicit factual allegations'; a mere assertion that a municipality has such a custom or policy is insufficient."); *Maloney v. Cty. of Nassau*, 623 F. Supp. 2d 277, 289-90 (E.D.N.Y. 2007)("Although plaintiff in this case alleges that various County Defendants were acting 'pursuant to official policy,' . . . plaintiff's Amended Complaint does not even identify a municipal policy or custom that resulted in the alleged Constitutional violations. Moreover, the Amended Complaint does not allege facts which suggest the existence of a municipal policy or custom. At most, plaintiff's pleading describes a single incident in which municipal employees allegedly violated plaintiff's Constitutional rights. However, proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of

the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker.")(citation omitted).  Accordingly, the municipal policy claim against the Town of Ulster is dismissed.

### b. County Defendants' Motion, Dkt. No. 44

#### 1. Claims Against Individual County Defendants

With respect to the personal involvement of any individual County of Ulster defendants, Plaintiff specifically identifies acts of Defendants Kyle Faulkner, William Moylan, Steven Fellows, and Police Officers Sickler, Gramoglia and Reavy – all of whom are or were employees of the Town of Ulster Police Department.  *See* SAC at ¶¶ 15-18. These defendants are not under the supervision of or employed by the County.  The only individual defendants that may have been connected to the County include some of the John or Jane Doe 1-10 defendants, who Plaintiff broadly described as "police officers, detectives, sheriffs, deputy sheriffs, supervisors, policymakers or officials employed by the Town of Ulster, County of Ulster or the State of New York." SAC at ¶¶ 19-20.   As demonstrated by the SAC, Plaintiff broadly lumps together defendants Faulkner, Moylan, Sickler, Gramoglia, Reavy and John or Jane Doe 1-10 in each allegation of the Complaint in which the John or Jane Doe 1-10 defendants were mentioned.  Nowhere does the SAC differentiate the facts that describe the specific acts or omissions of any of the John or Jane Doe 1-10 defendants, either from each other or from the rest of the defendants. Thus, the SAC fails to allege any personal involvement by the John or Jane Doe 1-10 defendants in any state action which could have violated Plaintiff's Constitutional rights, or caused any injury sufficient to demonstrate any cognizable claim pursuant to § 1983. Furthermore, as discussed above, this broad "group pleading" fails to provide sufficient

notice of the bases for the claims against these individuals.  Thus, all claims against the John or Jane Doe 1-10 defendants must be dismissed.

### 2. *Monell* Claim Against Ulster County

Because Plaintiff fails to sufficiently plead a constitutional violation by any Ulster County employee, the *Monell* claim against Ulster County must be dismissed. *See Morgan v. Cty. of Warren*, No. 1:21-CV-0278 (LEK/DJS), 2022 WL 195065, at *6 (N.D.N.Y. Jan. 21, 2022).[8]

## IV.    CONCLUSION

For the reasons set forth above, the Town Defendants' motion to dismiss, Dkt. Nos. 43, 45, in **GRANTED** in part and **DENIED** in part.  The motion is denied in that claims asserting the false arrest/improper seizure of Plaintiff by Defendant Faulkner remain viable, but is granted in that all other claims against Town Defendants are **DISMISSED**. The County Defendants' motion to dismiss, Dkt. No. 44, is **GRANTED**, and all claims against the Town Defendants are **DISMISSED**.

---

[8]In Morgan, Judge Kahn wrote:

> A *Monell* claim for municipal liability cannot survive absent an underlying constitutional violation. *See Pinter v. City of New York*, 448 F. App'x 99, 106 (2d Cir. 2011) (summary order) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) (dismissing *Monell* claim because "if [the officer] inflicted no constitutional injury on respondent, it is inconceivable that [the city] could be liable to respondent."); see also Lopez v. City of New York, No. 19-CV-3887, 2021 WL 466974, at *7 (S.D.N.Y. Feb. 9, 2021) ("An underlying constitutional violation is a prerequisite to [Monell] municipal liability.") (citing Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)). Because Plaintiff's § 1983 causes of action have been dismissed, Defendant County of Warren cannot be liable under *Monell*.

2022 WL 195065, at *6.

Because many of Plaintiff's claims are dismissed due to pleading deficiencies, Plaintiff is granted leave of thirty (30) days in which to move to amend the Second Amended Complaint.  The failure of the Plaintiff to move for amendment within thirty (30) days will cause this case to move forward only on the remaining claims.

**IT IS SO ORDERED.**

Dated: March 17, 2022

Thomas J. McAvoy
Senior, U.S. District Judge